Dear Senator Jolley:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. According to Article XXVIII, Section 7 of the Oklahoma Constitution, a sales tax upon alcoholic beverages is mandated to be enacted by the Legislature. Discretionary authority is given the Legislature to enact a use/excise tax and a second sales tax (the second sales tax was called an "added sales tax" by the Oklahoma Attorney General in A.G. Opin. 84-197, at 355). Section 7 of Article XXVIII further mandates that all of these three taxes shall be distributed as set forth in said Section 7 except for sales tax, which is not subject to the distribution method set forth therein. The Oklahoma Attorney General opined (A.G. Opin. 84-197, at 355) that Section 7's distribution method is inapplicable to the use/excise tax authorized in Section 7, and levied and distributed pursuant to 37 O.S.Supp. 1984, §§ 553[37-553] and 563. Therefore, to what alcoholic beverage tax revenue does Section 7's distribution method apply if not to (1) use/excise tax revenue, or (2) sales tax revenue since the "added sales tax" is a form of a sales tax? 
 2. In conformance with the constitutional mandate above, the Legislature has enacted one sales tax on alcoholic beverages pursuant to 68 O.S.Supp. 2010, § 1354[68-1354]. The Legislature chose, pursuant to its authority in the Constitution, to enact a use/excise tax levy on alcoholic beverages at 37 O.S.Supp. 2010 § 553[37-553], with the rules of distribution of said tax revenue set forth in 37 O.S.Supp. 2010, § 563[37-563]. Has the Legislature enacted the "added sales tax" on alcoholic beverages that is authorized by Article XXVIII, Section 7 of the Oklahoma Constitution? *Page 2 
 3. If the answer to (2) is "no" and if in the future the Legislature enacts enabling legislation levying said "added sales tax" upon the sale of alcoholic beverages, how must the added sales tax revenues be distributed so long as Article XXVIII, Section 7, of the Oklahoma Constitution remains unchanged?
 4. When distributing alcoholic beverage tax revenues pursuant to subsection 2 of 37 O.S.Supp. 2010, § 563[37-563], should the Oklahoma Tax Commission distribute said taxes to counties based upon the area and population of only incorporated cities and towns within the county as opposed to distribution based upon the area and population (incorporated and unincorporated) of the entire county?
 5. When distributing monies to cities and incorporated towns in the state, pursuant to 47 O.S.Supp. 2010, § 1104[47-1104](I), based upon the proportion that each city or incorporated town's population bears to the total population of all cities and incorporated towns in the state, should the Oklahoma Tax Commission use the most recent annual estimate provided by the U.S. Bureau of the Census in years between the Federal Decennial Census?
 6. When distributing monies to the treasurers of various incorporated cities and towns of the state pursuant to 68 O.S.Supp. 2010, § 500.6[68-500.6](A), based upon the percentage, which the population, as shown by the last Federal Decennial Census or the most recent annual estimate provided by the U.S. Bureau of the Census, bears to the total population of all the incorporated cities and towns of the state, should the Oklahoma Tax Commission use the most recent annual estimate provided by the U.S. Bureau of the Census in years between the Federal Decennial Census?
 I. THE ALLOCATION OF TAX PROCEEDS UNDER ARTICLE XXVIII, SECTION 7 OF THE OKLAHOMA CONSTITUTION
In this part of the Opinion we address your first three questions, which all deal with Article XXVIII, Section 7 of the Oklahoma Constitution. Article XXVIII, Section 7, was adopted by the people of Oklahoma in 1984 when they approved State Question No. 563,[1]
which amended the entirety of Article XXVIII dealing with Alcoholic Beverage Laws and Enforcement. As adopted in State *Page 3 
Question 563, Section 10 of Article XXVIII, titled "Taxation and licensing — Distribution of funds," first requires that the retail sales of alcoholic beverages are to be subject to the general sales tax laws, providing:
 The retail sale of alcoholic beverages shall be subject to the sales tax statutes enacted by the Legislature. . . .
Okla. Const. art. XXVIII, § 7 (emphasis added).
In addition to requiring that the retail sales of alcoholic beverages be subject to sales tax statutes, Article XXVIII, Section 7 also vested the Legislature with the discretionary power to levy additional taxes related to the manufacture, possession and sales of alcoholic beverages:
 [A]nd in addition thereto the Legislature may levy taxes upon the manufacture, possession and/or all sales of alcoholic beverages, including sales by retail package stores and sales by the individual drink for on-premises consumption. . . .
Id. (emphasis added).
Article XXVIII, Section 7 also provided for the distribution of tax proceeds, in pertinent part providing:
 [T]he proceeds of which, except sales tax, shall be distributed as follows:
 (a) The Oklahoma Tax Commission shall collect and distribute the taxes collected under the terms of this Article and shall distribute ninety-seven percent (97%) of such taxes as are levied and as are attributable to retail sales[2] by package stores as follows:
 (1) One-third (1/3) of taxes attributable to sales by retail package stores shall be allocated to the counties of the State of Oklahoma on the basis of area and population (giving equal weight to area and population) and all of said funds shall be appropriated by the Board of County Commissioners in each county to all incorporated cities and towns in said county on the basis of population within each city *Page 4 
and town on a per capita basis based on the last preceding Federal Decennial Census.
 (2) Two-thirds (2/3) of taxes attributable to sales by retail package stores shall be credited to the General Revenue Fund of the State of Oklahoma.
 (b) The remaining three percent (3%) of taxes attributable to sales of alcoholic beverages by retail package stores; and up to (3%) of taxes attributable to sales of alcoholic beverages by the individual drink for on-premises consumption, as shall be determined by the State Legislature; shall be paid to the State Treasurer and placed to the credit of the Oklahoma Tax Commission Fund, to be paid out of said fund pursuant to appropriations made by the State Legislature.
 (c) The remaining taxes attributable to sales of alcoholic beverages by the individual drink for on-premises consumption, shall be credited to the General Revenue Fund of the State of Oklahoma. The State Legislature shall appropriate to the Oklahoma Alcoholic Beverage Laws Enforcement Commission from all available taxes collected under this Article, whatever funds are necessary to provide for full enforcement of the alcoholic beverage laws of the State.
 (d) All State license fees shall be collected by the Oklahoma Alcoholic Beverage Laws Enforcement Commission and deposited in the State Treasury and after the expenses of the Commission, as approved by the Legislature, have been deducted, the balance shall be credited to the General Fund.
Id. (emphasis added) (footnote added).
In its entirety, the first paragraph of Article XXVIII, Section 7 reads as follows:
 The retail sale of alcoholic beverages shall be subject to the sales tax statutes enacted by the Legislature and in addition thereto the Legislature may levy taxes upon the manufacture, possession and/or all sales of alcoholic beverages, including sales by retail package stores and sales by the individual drink for on-premises consumption, the proceeds of which, except sales tax, shall be distributed as follows[.]
Id. (emphasis added). *Page 5 
Your first three questions relate to Article XXVIII, Section 7, which deals with the application of the Section's distribution formula. As noted in your questions, that distribution formula was addressed in a 1984 Attorney General's Opinion 84-197, shortly after Article XXVIII, Section 7's adoption. That Opinion concluded the distribution formula of Article XXVIII, Section 7 did not apply to the proceeds from the general statutory sales tax nor to the excise tax revenues collected pursuant to 37 O.S.Supp. 1984, § 563[37-563], or other excise taxes referred to in Article XXVIII, Section 7 upon the manufacture or possession of alcoholic beverages. Id. at 356. Opinion 84-197 did, however, conclude that the distribution formula of Article XXVIII, Section 7 would apply to any "special `retail sales surtax'" enacted by the Legislature pursuant to Article XXVIII, Section 7. Id.
In light of the conclusions reached in Attorney General Opinion 84-197, you ask to what current tax proceeds do the provisions of Article XXVIII, Section 7's distribution formula apply. While we do not totally agree with the conclusions reached in Opinion 84-197 we do conclude, as that Opinion did, that the tax proceeds distribution formula of Article XXVIII, Section 7 of the Oklahoma Constitution was not meant to, nor does it apply to any taxes in existence at the time of the measure's adoption by the people in 1984. Thus, the formula does not apply to any current tax proceeds.
This is so for two reasons. First, the tax proceeds distribution formula contained in Article XXVIII, Section 7, applies only to discretionary taxes enacted by the Legislature after Section 7's adoption, as it applies to taxes that the Legislature may levy "upon the manufacture, possession and/or all sales of alcoholic beverages, including sales by retail package stores and sales by the individual drink for on-premises consumption." Id. Second, since the peoples' adoption of Article XXVIII, Section 7, the Legislature has not enacted additional sales or excise taxes on the manufacture, possession or sales of alcoholic beverages.[3]
Accordingly, in answer to your first question we conclude there are no current sales or excise taxes to which Article XXVIII, Section 7's distribution formula applies, as the formula applies only to discretionary taxes enacted by the Legislature under the authority conferred in Section 7 — *Page 6 
additional taxes enacted by the Legislature since the adoption of that Section, and no such taxes have been adopted.
As a result of legislative inactivity in this area since 1984, the answer to your second question is no, the Legislature has not enacted an additional sales or excise tax on alcoholic beverages since Article XXVIII, Section 7's adoption in 1984.
Article XXVIII, Section 7's distribution formula indicates that it applies to proceeds, "except sales tax." As noted above, Attorney General Opinion 84-197 concluded that the distribution formula would not apply to general sales tax provisions, but would apply to any added sales tax — which the Opinion referred to as "retail sales surtax" enacted by the Legislature in the future. This construction of the Constitution limits the "except sales tax" exception language's application to the general sales tax imposed on all goods, and thus applies the formula to any additional sales tax imposed upon alcoholic beverages. Id. at 355.
While we agree with the conclusions in Opinion 84-197, that there is a dichotomy between existing taxes and discretionary taxes, which may in the future be enacted by the Legislature, we do not agree with the Opinion's limited construction of the "except sales tax" exemption language. We read that language to exempt all sales tax — both existing general sales tax and future sales tax imposed upon alcoholic beverages — from the distribution formula of Article XXVIII, Section 7. This conclusion is derived from the clear language of Section 7.
After requiring that retail sales of alcoholic beverages shall be subject to sales tax statutes, the language of the first paragraph of Section 7 of Article XXVIII recognizes the Legislature's power to levy additional taxes and provides, "the proceeds of which, except sales tax, shall be distributed as follows." Id. (emphasis added). To read this "except sales tax" language to apply only to the State's general sales tax would not only apply the exception language only to the subject furthest removed from it in the sentence, it would read into the exception language an unexpressed intention, the intention that the exception not apply to discretionary, additional sales tax. The language of the provision does not allow for such a construction. The language is clear; it refers to sales tax without limitation as there is no limiting language in the sentence. Thus, in answer to your third question, we conclude that the tax proceeds distribution formula of Article XXVIII, Section 7 does not apply to any sales tax — either the general sales tax or specific sales taxes imposed upon the sale of alcoholic beverages.
To the extent that Attorney General Opinion 84-197 is inconsistent with our conclusion that the Constitution's tax proceeds distribution formula's sales tax exemption applies to all sales tax, it is withdrawn. *Page 7 
 II. ALLOCATION OF EXCISE TAX PROCEEDS TO COUNTIES UNDER THE OKLAHOMA ALCOHOLIC BEVERAGE CONTROL ACT
In your fourth question you ask if the allocation of alcoholic beverage excise tax proceeds to counties under the provisions of 37 O.S.Supp. 2010, § 563[37-563], should be based upon the area and population only of incorporated cities and towns within the county, as opposed to distribution based upon the area and population of the entire county. The provision, subsection 2 of 37 O.S.Supp. 2010, § 563[37-563] about which you inquire, provides for two separate allocations of the proceeds from excise tax levied on alcoholic beverages by Section 553 of Title 37. The first allocation is made by the Oklahoma Tax Commission to counties in which the sale of alcoholic beverages is lawful. The second allocation is made by the County Treasurer to all incorporated cities and towns in the county. Id. § 563(2).
Your question deals with the first allocation, the Tax Commission's allocation of tax revenues to counties in which the sale of alcoholic beverages is lawful. The language of 37 O.S.Supp. 2010, § 563[37-563], which deals with both of these allocations provides:
 2. One-third of ninety-seven percent (1/3 of 97%) of such revenue is hereby allocated to the counties of this state and shall be paid to the county treasurers on the basis of area and population (giving equal weight to area and population) wherein the sale of alcoholic beverages is lawful, and all of said funds shall be appropriated by the county commissioners of each county and apportioned by the county treasurer to all incorporated cities and towns in said county on the basis of population within each city and town on a per capita basis based on the last preceding Federal Decennial Census.
Id. (emphasis added).
The allocation you inquire about is controlled by the highlighted language in the above quoted provision. The allocation is to be made to each county in which the sale of alcoholic beverages is lawful on the basis of area and population giving equal weight to area and population. This allocation, which is to be carried out by the Tax Commission is not to cities and towns within the county but it is to the county. Id. Accordingly, the allocation should be based on the area and population of the entire county. Id.
On the other hand, the County Commissioners of each county receiving such funds must appropriate the funds to all incorporated cities and towns within the county as apportioned by the County Treasurers, based upon the population within each city and town on a per capita basis as reported in the last Federal Decennial Census. Id. This appropriation by the County Commissioners is limited to consideration of population within cities and towns only. Id.
Thus, in answer to your fourth question, we conclude that the allocation of proceeds of excise tax made by the Tax Commission under the direction of 37 O.S.Supp. 2010, § 563[37-563](2), is to be based upon *Page 8 
the area and population of the entire county (giving equal weight to area and population), and not just the areas and populations of the cities and towns within the county.
 III. APPORTIONMENT UNDER 47 O.S.SUPP. 2010, § 1104[47-1104](I), OF FEES, TAXES AND PENALTIES COLLECTED UNDER THE OKLAHOMA VEHICLE LICENSE AND REGISTRATION ACT
Your fifth question asks how the Tax Commission is to determine the population of cities and incorporated towns for the purpose of allocating the fines, fees and penalties collected under the Oklahoma Vehicle License and Registration Act. The allocation section of law to which you refer, 47 O.S.Supp. 2010, § 1104[47-1104], in pertinent part provides:
 A. Unless otherwise provided by law, all fees, taxes and penalties collected or received pursuant to the Oklahoma Vehicle License and Registration Act or Section 1-101 et seq. of this title shall be apportioned and distributed monthly by the Oklahoma Tax Commission in accordance with this section.
 . . . .
 I. 1. The following percentages of the monies referred to in subsection A of this section shall be apportioned to the various cities and incorporated towns as set forth in paragraph 2 of this subsection:
 . . . .
 c. for the year beginning July 1, 2002, and all subsequent years, three and ten one-hundredths percent (3.10%).
 2. The monies apportioned pursuant to subparagraphs a through c of paragraph 1 of this subsection shall be apportioned to the various cities and incorporated towns based upon the proportion that each city or incorporated town's population bears to the total population of all cities and incorporated towns in the state. Such funds shall be remitted to the various county treasurers for allocation to the various cities and incorporated towns. All such funds shall be used for the construction, maintenance, repair, improvement and lighting of streets and alleys. Provided, however, the governing board of any city or town may, with the approval of the county excise board, transfer any surplus funds to the general revenue fund of such city or town whenever an emergency requires such a transfer.
Id. (emphasis added). *Page 9 
In classifying various entities such as towns and cities by population, the Legislature often requires that the population be based upon "the most recent Federal Decennial Census" (11 O.S.Supp. 2010, § 17-105[11-17-105](B)), or based upon "the last Federal Decennial Census." 2 O.S. 2001, § 15-112[2-15-112]. At other times the Legislature refers to the "latest federal census or other census recognized by the laws of Oklahoma" (11 O.S. 2001, § 5-101[11-5-101](3)), or the "last Federal Decennial Census or the most recent annual estimate provided by the U.S. Bureau of the Census." 68 O.S.Supp. 2010, § 500.6[68-500.6](A)(7). Then, in some instances the Legislature requires that the "Federal Decennial Census" be used and that "[n]o other census however authorized shall have any effect insofar as this act is concerned." 19 O.S. 2001, § 180.72[19-180.72] (footnote omitted).
In directing disbursements of a portion of the fees, taxes and penalties collected under the Oklahoma Vehicle License Registration Act, subsection E of 47 O.S.Supp. 2010, § 1104[47-1104] requires that beginning on July 1, 2002, and in all subsequent years thereafter, seven and twenty-four one-hundredths of a percent (7.24%) (id. § 1104(E)(1)(c)) of collections are to be distributed among the counties with forty percent (40%) of the distribution based upon the road mileage of each county of the State, and the remaining sixty percent (60%) on the basis which the population and area of each county bears to the total population and area of the State, instructing that "[t]he population shall be as shown by the last Federal Census or the most recent annual estimate provided by the United States Bureau of the Census." Id. § 1104(E)(2) (emphasis added).
However, the subsection about which you inquire, subsection I of Section 1104 of Title 47 is silent regarding how the Tax Commission is to determine the population of cities and incorporated towns for the purpose of appropriating the funds. When the Legislature provides no instructions — no limit on how population is to be determined for purposes of such distribution, we conclude that because each time the distributions are made they are to be based on population, the current population should be used. Thus, the Tax Commission should use the best and most recent census data available — in this case the last Federal Decennial Census or, if available, the most recent annual estimate provided by the U. S. Bureau of the Census. We reach this conclusion because the intent of the subsection is that population be used as a basis for distributing the funds, and as we have seen from the various provisions related to population, the Legislature recognizes that in addition to the latest Federal Decennial Census there are annual estimates provided by the United States Census Bureau. Accordingly, unless the Legislature instructs otherwise, distribution should be made based upon the current population of the counties or cities involved — the population reflected in the most recent annual estimates provided by the Census Bureau.
 IV. APPROPRIATION OF GASOLINE TAX PROCEEDS UNDER 68 O.S. 2001, § 500.6(A)
The statute you ask about in your sixth and last question, 68 O.S.Supp. 2010, § 500.6[68-500.6](A), provides for the Tax Commission to apportion and distribute gasoline taxes on a monthly basis as set forth in the statute's various subsections. You ask if in distributing such funds based upon population the Tax Commission should use the latest Federal Decennial Census or the most recent annual estimate *Page 10 
provided by the United States Census Bureau. The various subsections within Section 500.6(A) instruct that in some instances the Tax Commission is to use the latest Federal Decennial Census, (id. § 500.6(A)(4)(b)) and in other instances the Commission is to use the last Federal Decennial Census or the most recent annual estimate provided by the United States Bureau of the Census. See id. § 500.6(A)(4)(a)(2), (A)(7).
Subsection (A)(4) of Section 500.6 of Title 68 sets forth various formulas to distribute twenty-seven percent (27%) of the gasoline tax levy to counties. A certain portion of the twenty-seven percent (27%) is distributed to the counties based on population "as shown by the last Federal Decennial Census or the most recent annual estimate provided by the U.S. Bureau of the Census." Id. § 500.6(A)(4)(a)(2) (emphasis added).
On the other hand, under subsection (A)(4)(b) of Section 500.6, twenty-three and one-tenth percent (23.1%) of the twenty-seven percent (27%) is to be distributed according to the population based upon "the latest Federal Decennial Census." Id. (emphasis added). Yet, at subsection (A)(7) of Section 500.6, one and eight hundred and seventy-five percent (1.875%) of the applicable funds are to be distributed to incorporated cities and towns on the basis of population "as shown by the last Federal Decennial Census or the most recent annual estimate provided by the U.S. Bureau of the Census." Id. Accordingly, in appropriating and distributing the designated portions of the gasoline tax in accordance with the Legislature's instruction in Section 500.6(A) of Title 68 the Tax Commission must, in each instance, follow the specific instructions in each subsection, some of which require the funds be distributed on the basis of population as established by the last Federal Decennial Census, while others require distribution be based on the last Federal Decennial Census or the most recent annual estimate provided by the U.S. Bureau of the Census.
It is, therefore, the official Opinion of the Attorney General that:
 1. The tax proceeds allocation formula contained in Article XXVIII, Section 7 of the Oklahoma Constitution is applicable only to discretionary taxes enacted by the Legislature after the people's adoption of the new Article XXVIII in 1984. The Section's allocation formula is not applicable to proceeds from the excise tax revenue collected under 37 O.S.Supp. 2010, § 553[37-553].
 2. The tax proceeds allocation formula in Article XXVIII, Section 7 is not applicable to any sales tax, whether in existence in 1984 when Article XXVIII, Section 7 was adopted or enacted thereafter, because all sales tax are exempt from the tax proceeds allocation formula. To the extent that Attorney General Opinion 84-197 is inconsistent with our conclusion that Article XXVIII, Section 7's sales tax exemption applies to all sales tax, that Opinion is withdrawn. *Page 11 
 3. There are no current sales or excise taxes to which the allocation tax proceeds allocation formula of Article XXVIII, Section 7 applies, because since the adoption of that provision in 1984, the Legislature has not enacted any additional sales or excise taxes under the discretionary powers vested in the Legislature by that provision.
 4. In allocating the proceeds of alcoholic beverage excise taxes to counties under the provisions of 37 O.S.Supp. 2010, § 563[37-563], based upon each county's area and population (giving equal weight to area and population), the Oklahoma Tax Commission is to make the allocation based on the population and area of the entire county, not just upon the areas and populations of cities and towns within the county.
 5. In apportioning fees, taxes and penalties under the provisions of 47 O.S.Supp. 2010, § 1104[47-1104](I), on the basis of population, the Oklahoma Tax Commission is to determine population based upon the most current population information available — the latest Federal Decennial Census, or, when available, the most recent annual estimate provided by the United States Bureau of the Census.
 6. In allocating gasoline tax proceeds under the provisions of 68 O.S. 2001, § 500.6[68-500.6](A) on the basis of population, the Oklahoma Tax Commission must follow the Legislature's instructions in each specific subsection, some of which require that population be based on the last Federal Decennial Census while other subsections require that population be based upon the last Federal Decennial Census or the most recent annual estimate provided by the United States Bureau of the Census.
E. SCOTT PRUITT ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL
[1] Article XXVIII, Section 7 was added by State Question No. 563, Initiative Petition No. 319. The constitutional amendment was adopted at an election held September 18, 1984. See https://www.sos.ok.gov/gov/questions.aspx (last visited April 5, 2011).
[2] While Article XXVIII, Section 7's tax distribution formula exempts sales tax from that formula, it does not exempt other taxes which might be attributable to the retail sales of alcoholic beverages. A sales tax is only one type of tax which may be attributable to sales of a product. For example, the tax imposed upon cigarettes, which is prepaid by cigarette wholesalers and passed on to the consumer who purchases the cigarettes is not a sales tax but rather it is an excise tax. 68 O.S. 2001, § 302[68-302]. Accordingly, there is no contradiction between the formula's exemption of sales tax and its inclusion of taxes attributable to sales, because a sales tax is only one type of tax that may be levied and be attributable to a sale.
[3] In 1985, the Legislature did impose a mixed beverage, gross receipts tax under the provisions of 37 O.S. 2001, § 576[37-576]. Under the provisions of 37 O.S. 2001, § 576.1[37-576.1], all of the gross receipts tax are "paid to the State Treasurer and placed to the credit of the General Revenue Fund of the State." Id.
Even if this mixed beverage gross receipts tax could be considered an alcoholic beverage tax under Article XXVIII, Section 7, the statutory distribution of these funds to the General Revenue Fund is consistent with Section 7's tax distribution formula. Under the formula the Legislature has the discretion to direct up to three percent (3%) of the tax attributable to the sale of alcoholic beverages by the individual drink to be placed with the State Treasurer to the credit of the Oklahoma Tax Commission, with the rest of such proceeds paid into the General Revenue Fund of the State of Oklahoma. Accordingly, even if the mixed beverage tax fell within the purview of Article XXVIII, Section 7's distribution formula, none of its proceeds are distributed to counties, cities or towns, and the Legislature's direction of the taxes' proceeds to the General Fund of the State of Oklahoma is consistent with the Constitution's distribution formula. *Page 1